UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-                                                    Case No.  6:13-cr-280-Orl-28DAB

WILLIAM EDWARD OSMAN

---

### ORDER

This case is before the Court following a restitution hearing that was held on December 12, 2014. (See Hr'g Mins., Doc. 93; Hr'g Tr., Doc. 95). Several weeks after the hearing, the parties filed memoranda regarding their positions as to restitution. (Def.'s Mem., Doc. 99; Gov't's Mem., Doc. 100).

#### I. Background

Defendant pleaded guilty to charges of producing (Count I), distributing (Count VII), and possessing (Count IX) child pornography—violations of 18 U.S.C. §§ 2251 and 2252A. (See Plea Agreement, Doc. 34; Acceptance of Plea, Doc. 41). Defendant produced child pornography by sexually abusing his daughter, who was approximately one year old at the time, and photographing that abuse.[1] (See Plea Agreement at 17-18). He distributed those images and also possessed hundreds of pornographic images of other children. (See id. at 19-20). The Court sentenced Defendant to 720 months' imprisonment for these offenses. (Mins., Doc. 56; Judgment, Doc. 58). Determination of the amount of restitution owed by

---

[1]As stated by defense counsel at the restitution hearing, Defendant "took photographs of his infant daughter between the ages of her being seven months old until the time she was a year and four months." (Hr'g Tr. at 3).

Defendant was deferred pending a hearing; as earlier noted, that hearing was held on December 12, 2014.

## II. Legal Standards and Summary of the Parties' Arguments

The restitution statute that applies in this case is 18 U.S.C. § 2259, which provides that "[n]otwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter." 18 U.S.C. § 2259(a). "This chapter" refers to chapter 110 of Title 18, which is titled "Sexual Exploitation and Other Abuse of Children" and includes 18 U.S.C. §§ 2251-2260A. As noted above, Defendant pleaded guilty to violations of 18 U.S.C. §§ 2251 and 2252A—offenses within chapter 110.

Paragraph 2259(b)(1) provides that "[t]he order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court." Paragraph 2259(b)(3) defines "full amount of the victim's losses" as "includ[ing] any costs incurred by the victim for . . . medical services relating to physical, psychiatric, or psychological care" and "any other losses suffered by the victim as a proximate result of the offense."[2]

"Restitution is . . . proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." Paroline v. United States, 134 S. Ct. 1710, 1722

---

[2]In full, paragraph 2259(b)(3) provides: "For purposes of this subsection, the term 'full amount of the victim's losses' includes any costs incurred by the victim for–(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense."

(2014). "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense [is] on the attorney for the Government." 18 U.S.C. § 3664(e); see also 18 U.S.C. § 2559(b)(2) (providing that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664"). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e).

"'The [g]overnment must demonstrate the amount of [a victim's] loss with evidence bearing sufficient indicia of reliability to support its probable accuracy.'" United States v. Rouhani, 598 F. App'x 626, 632 (11th Cir. 2015) (first alteration in original) (quoting United States v. Singletary, 649 F.3d 1212, 1217 n.21 (11th Cir. 2011)). "However, 'the determination of the restitution amount is by nature an inexact science,'" and "where difficulties arise in establishing the exact amount of restitution, a district court may accept a 'reasonable estimate' of the loss based on the evidence presented." Id. (quoting United States v. Huff, 609 F.3d 1240, 1248 (11th Cir. 2010), and citing United States v. Futrell, 209 F.3d 1286, 1291-92 (11th Cir. 2000)).

The Government seeks imposition of restitution in the amount of $26,810. This sum consists of $17,875 in counseling costs for Defendant's daughter,[3] A.E.–the child who was the subject of the pornographic images created by Defendant[4]–and $8,935 in counseling

------

[3]As noted in the Final Presentence Investigation Report, Defendant has never been married but he has three children from three different relationships. (See Doc. 50 at 12). The child at issue here, A.E., is the youngest of Defendant's children.

[4]Initially, two other children whose images were among those Defendant possessed also sought restitution, but the Government advised during the restitution hearing that those

costs for the child's mother.  Defendant does not contest that the crimes of which he was convicted are among the offenses specified in § 2259.  However, he asserts that the counseling costs for the child are speculative, and at the hearing (though not in his post-hearing memorandum) he argued that the child's mother is not a "victim" under § 2259.  (See Hr'g Tr. at 3).

### III. Hearing Testimony

At the restitution hearing, the Government presented the testimony of one witness: Sharilyn Rowland Petrie, a licensed counselor.  (See Hr'g Tr. at 10).  Ms. Rowland Petrie specializes in work with child victims of sexual abuse, physical abuse, and domestic violence; victims of sexual violence make up approximately eighty percent of her caseload.  (Id. at 10-11).  She estimated that she has counseled sixty clients per year for the past fourteen years.  (Id. at 11).  Ms. Rowland Petrie explained that clients who have been victims of sexual abuse and violence return to her at different stages of their development.  (Id.).

Ms. Rowland Petrie met with the child's mother the day prior to the hearing.  (Id.).  At that time, they discussed the behavioral characteristics of the child, who was then two and a half years old.[5]  (Id. at 12).  At the hearing, Ms. Rowland Petrie explained the type and duration of therapy that would be needed for this child.  She acknowledged that the child's future needs are necessarily speculative but explained that this speculation is based not only on research about the consequences of early adverse life experiences but also on her own

---

victims had "agreed to withdraw their requests for restitution so that any monies earned by the defendant can go to the infant victim and her family."  (Hr'g Tr. at 6).

[5]Defense counsel stipulated that the child was born in July 2012.  (Hr'g Tr. at 4).

experience as a counselor.  (Id.).

Ms. Rowland Petrie described two different types of therapies that are appropriate for child and adult victims of trauma—cognitive behavioral therapy and Eye Movement Desensitization and Reprocessing ("EMDR") therapy.  (Id. at 12-13).  Cognitive behavioral therapy "requires that the client be able to have and create a trauma narrative," and the basis of the therapy is correcting negative cognitions or addressing the feelings about the trauma narrative.  (Id. at 13).  EMDR therapy, on the other hand, does not require a trauma narrative.  (Id.).

Ms. Rowland Petrie explained that because the child in this case was so young when the abuse occurred, the child's memories "will be stored in a nonverbal format and she will not be able to participate in cognitive behavioral therapy because it is unlikely that she'll be able to recall these events in a narrative form."  (Id.).  Because the child would not likely be able to construct a trauma narrative, "she would need specialized care using EMDR therapy."  (Id. at 28; see also id. at 29 (testimony that EMDR therapy "would be a treatment of choice for this child")).  This EMDR treatment is necessary as a direct result of the abuse that the child in this case suffered.  (Id. at 14).

EMDR therapy "is based on the idea that you have to clean out all past memories, current reminders and future areas of concern, areas that . . . may come up or present as an issue."  (Id. at 13).  If areas "are left undone, this material could get stimulated again and result in disturbance," and "that disturbance will fuel behavioral problems and emotional distress in the child."  (Id.).  While it may be possible to "clear out all the past, present, and future" in one course of treatment where adult victims are involved, such a result from a

single course is unlikely in the case of a child victim. (Id. at 14).  With child victims, there is an improvement after treatment "until something else gets triggered," whereupon an additional course of treatment would be needed.  (Id.).

Ms. Rowland Petrie confirmed that a six-month course of treatment at a rate of $125 per hour would cost $3250.  (Id. at 15).  Based on her training and experience, Ms. Rowland Petrie stated that a second stage of therapy for the infant victim in this case would be needed roughly when the child reaches the second grade.  (Id.).  Nine months of therapy at that stage at $125 per hour would cost $4875.  (Id. at 20).  A third course of therapy would be required when the child becomes an adolescent, and a nine-month course of weekly therapy at $125 per hour would cost $4875.  (Id. at 20-21).  Ms. Rowland Petrie testified that she would expect a need for at least one more course of therapy when the child is either selecting a life partner or having her own family.  (Id. at 21).  She estimated that six months of therapy would be needed at that point, for a cost of $3250 using a $125 hourly rate.  (Id. at 21-22).

Ms. Rowland Petrie also testified that the child's mother would need to participate in therapy as well when the child is young to learn her own behavioral techniques to be able to support the child.  (Id. at 22).  According to Ms. Rowland Petrie, if the mother did not get her own treatment, she would not learn how to protect the child and keep her safe in the future.  (Id. at 24).  Ms. Rowland Petrie stated that a conservative estimate of the therapy needed for the mother would be approximately half of that of the child.  (Id.).

On cross-examination, Ms. Rowland Petrie acknowledged that she has not seen the child and that her opinion regarding the child's need for counseling is based on research,

her own experience, and the report that she received from the mother.  (Id. at 25).  She explained that a child who experienced events at between seven and fourteen months old would have a memory in the form of a "felt sense" or "emotional sense" but would not be able to verbalize what happened to her.  (Id. at 25-26).  Ms. Rowland Petrie concluded her testimony by stating that "treatment at this point is recommended to be able to address [the issues] as best we can with someone so young," though she acknowledged that it is possible for a child who had these experiences to "live a normal life" without an impact on her from the events of her infancy.  (Id. at 31).

### IV. Discussion

#### A. Restitution for the Child

The Government argues that the testimony of Ms. Rowland Petrie supports restitution to cover the future counseling costs of the child.  Defendant, however, argues that "no losses have been shown" and that "[t]he assumption that damages will arise in the future is sheer speculation and not supported by competent evidence." (Doc. 99 at 4).  The Court concludes that Ms. Rowland Petrie's testimony indeed supports imposition of restitution for the costs of counseling for the child.

Defendant asserts that the Government did not establish any losses proximately caused by his actions, relying on the Supreme Court's Paroline decision and on United States v. McGarity, 669 F.3d 1218 (11th Cir. 2012).  This argument, however, misses the mark.  In Paroline, which involved possession of child pornography, the Supreme Court addressed "the question [of] what causal relationship must be established between [a] defendant's conduct and a victim's losses for purposes of determining the right to, and the

amount, of restitution under § 2259." 134 S. Ct. at 1716. And in McGarity—also a possession case—the Eleventh Circuit rejected an expert's testimony regarding "the type of harm suffered by a victim of sexual abuse," finding that such testimony did not speak to the harm caused by the defendant. Id. at 1269.

The case at bar is quite different from Paroline and McGarity, and Defendant's reliance on them is misplaced. Courts have struggled with how to compute restitution in cases of "mere" possessors of child pornography due to causation issues, but such issues are not present in production cases such as this one. Cf. Paroline, 124 S. Ct. at 1722 (noting that "but-for causation could be shown with ease in many cases involving producers of child pornography," "parents who permit their children to be used for child-pornography production," or "the initial distributor of the pornographic images of a child"). In the instant case, it is undisputed that Defendant sexually abused the child and produced pornographic images memorializing that abuse. There is no question that any losses suffered by the child due to the creation, distribution, and possession of images of her were caused by Defendant in the first instance.

The issue here is not whether Defendant proximately caused any loss that the child suffered but whether the Government established that this child suffered a loss for which restitution can be ordered. Defendant acknowledges that some courts have approved restitution for "future damages such as counseling," but he argues that in those cases there was "evidence that the victim needed counseling at the time of the award." (Doc. 99 at 4-5 (citing United States v. McDaniel, 631 F.3d 1204 (11th Cir. 2011), and United States v. Laney, 189 F.3d 954 (9th Cir. 1999)). Assuming the merit of this argument, in this case

there *is* evidence that the child needs counseling at the time of the award—the testimony of Ms. Rowland Petrie, who recommended EMDR therapy for this two-and-a-half-year-old child to negate or minimize the adverse impact on her from Defendant's pornography-producing activity.

Courts have indeed awarded restitution for future counseling costs and recognized the propriety of doing so. See, e.g., Laney, 189 F.3d at 967 & n.14 (holding that § 2259 allows for an award of future counseling costs and that "district courts must estimate the amounts that victims will spend on future counseling with reasonable certainty"); United States v. Danser, 270 F.3d 451, 455 & n.5 (7th Cir. 2001) (holding "that section 2259 allows for restitutionary damages for the future costs of therapy" and noting that the victim's loss "has been incurred and will continue to manifest itself for years"). Furthermore, courts have rejected arguments that the victim must already be in therapy, see United States v. McKay, No. 00-30024, 2000 WL 1517159, at *1 (9th Cir. 2000) ("Although the victim in Laney was already in therapy, we find nothing to suggest that this must always be the case . . . .")), and that the victim must actually be interested in seeking treatment, see In re Sealed Case, 702 F.3d 59, 67 (D.C. Cir. 2012) ("We compensate a victim with restitution, that is money—whether she chooses to use the money in a particular way is up to her.").

Courts have awarded restitution for future counseling costs based on evidence similar to Ms. Rowland Petrie's testimony. In In re Sealed Case, which involved charges of sex trafficking of children, the D.C. Circuit affirmed an award of restitution based on the testimony of a psychologist who prepared mental health assessments of the four victims, two of whom he did not interview. The psychologist opined as to their conditions and

treatment "based on his review of each victim's grand jury testimony, his extrapolation from the two victims he did interview and his previous experience in evaluating individuals without interviewing them." 702 F.3d at 62. The psychologist "concluded that each victim required 'significant mental health services, in different stages and to differing degrees, for the rest of her life,' including therapy, psychiatric care and educational tutoring." Id. And, in United States v. Sanderson, 515 F. App'x 16 (2d Cir. 2013), also a sex trafficking case, the Second Circuit affirmed an award of $25,608.80 in restitution for future psychological and psychiatric treatment. The supporting evidence in that case came from "a letter from a social worker who had worked extensively with the victim" and "who stated that she based her conclusions regarding future need for care based on her professional experience." 515 F. App'x at *1-2. Here, although Ms. Rowland Petrie did not meet with the child, she did obtain a direct assessment from the child's mother. Moreover, the Defendant's actions toward the child are undisputed.

Very recently, in United States v. Bour, No. 2:13-CR-36, 2015 WL 58761 (N.D. Ind. Jan. 5, 2015), a district court in the Northern District of Indiana imposed restitution of $37,500 for each of two victims—one three years old and one six years old[6]—based on the testimony of a psychologist who had not seen the victims. In Bour, which involved production of child pornography, the Government supported its restitution request with a

---

[6]It is not clear from the Bour court's order how old the victims were at the time of the offenses, but the defendant in that case was charged with—in addition to producing child pornography—"purchasing Jane Doe, an infant child, with knowledge that she would be portrayed in a visual depiction assisting him to engage in sexually explicit conduct." 2015 WL 58761 at *1. They were three and six years old when the restitution order was entered. See id. at *7.

report from a licensed clinical psychologist who "concluded that, because of their experiences, Jane Doe and Jane Doe 2 will likely 'need a minimum of 5-10 years of counseling, once a week for each of these victims, keeping in mind that there are significant, potentially lifelong, effects of their sexual abuse/traumatic experiences and the range could, in fact, be much larger." Id. at *3 (internal quotation omitted). The psychologist did not interview the victims but "reviewed the record and became familiar with the facts of th[e] case, considered social science research and empirical evidence as discussed in her report, and relied upon her extensive experience interviewing and treating victims of childhood sexual abuse." Id.

The Bour court rejected the defendant's argument that the psychologist's conclusions were "unsupported assumptions" and instead concluded that "her opinions are persuasive and supported by the record." Id. at *6. The defendant also argued that the victims were "too young to have been harmed by his actions," but the psychologist dispelled that assertion by citing research. Id. And, addressing the fact that the psychologist had not interviewed the victims, the court "agree[d] with the Government that there is neither a need for nor a requirement to conduct child forensic interviews when the undisputed abuse has been videotaped and described in detail for the consulting expert; this is especially true when the victims are currently aged three and six." Id. at *7.

The Bour court's analysis is sound, and based on it and the other cases cited above I find that the preponderance of the evidence supports the imposition of restitution for counseling costs for the child in this case. Ms. Rowland Petrie's testimony establishes that the child suffered a loss and provides a reasonable estimate of that loss. However, the

amount of restitution that the Government requests for the child—$17,875—is more than the Government established at the hearing. Ms. Rowland Petrie attested to four courses of counseling at costs of, respectively, $3250, $4875, $4875, and $3250. (See Hr'g Tr. at 15 & 20-22). These sums total $16,250—$1625 less than the Government's requested amount of $17,875. Because the evidence only supports $16,250 in counseling costs for the child, Defendant will be ordered to pay that amount.

### B. Restitution for the Child's Mother

The Government also seeks $8,935 in restitution for counseling costs for the child's mother—approximately half[7] of the amount it sought for the child's counseling costs. The Government argues that the mother is a victim under § 2259, citing subsection (c), which provides: "For purposes of this section, the term 'victim' means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian." 18 U.S.C. § 2259(c). At the restitution hearing, Defendant argued that the mother is not a victim under § 2259, (see Hr'g Tr. at 3), but he does not mention the issue of restitution as to the mother in his memorandum (Doc. 99).

Defendant has apparently now abandoned his argument that the mother is not a

---

[7] As earlier noted, the Government requested $17,875 for the child's counseling costs. Half of $17,875 is $8,937.50; the Government has apparently rounded down with regard to the amount it is seeking for the mother.

"victim" under § 2259, but the Government still bears the burden of establishing the amount of loss. See 18 U.S.C. § 3664(e). Here, assuming that the mother is a "victim" under § 2259[8] or, alternatively, that the costs for the mother's counseling could be considered part of the child's own loss, the evidence that the Government presented regarding such counseling costs is not sufficient to support an award for those costs.

With regard to counseling for the child, the Government established, through Ms. Rowland Petrie's testimony, that the child would need a specific number of hours of counseling at a specific hourly rate at four stages of her life, including one in adulthood. However, with respect to counseling for the mother, the Government's evidence fell short. The Government merely asked Ms. Rowland Petrie whether "half of that of the child victim" was a proper estimate of the needed therapy, and Ms. Rowland Petrie agreed. (Hr'g Tr. at 24). No explanation for this estimate was provided. This vague and conclusory testimony is not sufficient to support imposition of restitution for counseling costs for the mother.

---

[8]It is not clear that the definition of "victim" in § 2259(c) is indeed as broad as proposed by the Government. Other restitution statutes define "victim" differently. See, e.g., 18 U.S.C. §§ 3663(a)(2) & 3663A(a)(2) (providing, instead of including family members in the definition of "victim," that "[i]n the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, *may assume the victim's rights* under this section, but in no event shall the defendant be named as such representative or guardian" (emphasis added)). The reason for this difference is also unclear. See Catharine M. Goodwin, Federal Criminal Restitution 188 & n.4 (2014) (noting the different wording in these statutes and that "[t]he reason for the difference is not known, now has a court focused on this difference"). Because, as stated in the text infra, the Government's evidence was vague and conclusory with regard to counseling for the mother, the Government did not meet its burden as a factual matter; therefore, the Court need not reach the question of whether, as a matter of law, costs of counseling for the mother are properly awardable as restitution.

## V. Conclusion

In sum, the Government established that the child, A.E., sustained loss in the amount of $16,250.00.  A restitution order for this amount will be separately entered.

**DONE** and **ORDERED** in Orlando, Florida, on this 20 day of July, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
William Edward Osman